Filed 6/8/23  P. v. Ventura CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B318722 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BA209530 |
| v. | |
| JESSE VENTURA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mildred Escobedo, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Jesse Ventura appeals an order denying his petition for resentencing pursuant to Penal Code section 1172.6. In 2001, a jury found Ventura guilty of second degree murder of Joel Gonzalez. The resentencing case was at the evidentiary hearing stage, during which the prosecution needed to prove, beyond a reasonable doubt, Ventura was guilty under currently-valid law. (See *id.*, subd. (d).) The court found beyond a reasonable doubt that Ventura was guilty under currently-valid law, and substantial evidence supports this finding, so we affirm. All references are to the Penal Code unless otherwise specified.

I

We grant the prosecution's request for judicial notice of the appellate record from Ventura's direct appeal (B155942) and his first resentencing appeal (B297443). (See Evid. Code, §§ 459, 452.) We use these records to recount the facts of Ventura's case.

Eyewitness Irma Gonzalez testified at Ventura's trial. On September 27, 2000, she and her brother Joel Gonzalez were walking home from school. A blue car with three occupants approached them at about five miles per hour. Irma Gonzalez recognized the driver, Ventura, from seeing him many times at high school. The occupants stared at the siblings and passed them. Joel Gonzalez told Irma Gonzalez he did not know them.

The siblings continued walking for about 10 minutes. The blue car parked behind a truck that blocked the siblings' view. "[O]ut of nowhere" the three occupants, including Ventura, approached and blocked the siblings' path. The person who had

2

been in the front passenger seat wore a red bandana across his face, held a gun in his hand, and walked toward Joel Gonzalez. Ventura was about eight feet from the gunman.

The gunman repeatedly asked Joel Gonzalez about his gang affiliation and Joel Gonzalez repeatedly denied being in a gang. The gunman pointed the gun at Joel Gonzalez and lifted Joel Gonzalez's shirt to look for gang tattoos, but found none.

The gunman looked at Ventura and motioned his head left to right and then up and down. Ventura had his hand on his chin and nodded his head up and down several times. The third occupant looked down. The gunman pointed the gun at Irma Gonzalez and told her to move. She complied. The gunman then shot Joel Gonzalez one time. Joel Gonzalez fell to the ground. The gunman shot him several more times.

The three occupants ran to the car. Ventura returned to the driver's seat. He drove away quickly.

Detectives interviewed Ventura, who gave several different accounts. The jury at Ventura's trial had transcripts of these interviews and the detective who interviewed Ventura testified.

First, Ventura denied knowing anything about the shooting.

Second, he admitted giving a ride to two people he did not know well. While he was driving, the person in the front passenger's seat said, "There goes an enemy." Ventura parked the car. The two people ran out, but Ventura remained in the car. Ventura heard one shot, the two people ran back to the car,

and he "took off." He dropped them off where he had picked them up. He did not find out about the shooting until later that day.

Third, Ventura gave a similar account to the second account with additional information. Ventura said his friend called him at home. He and the friend "always joked, we always were friends." Ventura later said he had only known this friend for two months. Ventura thought the friend was from the gang "MS." Ventura picked up the friend and another person. They were driving around when they saw "this fool who is a rival gangster." The friend and the other person had seen the rival before when the rival was "gangbanging." Ventura told detectives, "I know he was a rival gangster." Ventura parked, got out of the car with the other two, but returned to the car before the shooting. Ventura saw the shooting, then "[w]e took off," and Ventura dropped the friend at the friend's house.

The court instructed the jury on first and second degree murder. Under these instructions, the jury could convict Ventura of second degree murder under any one of three theories: (1) he "intended unlawfully to kill a human being but the evidence is insufficient to prove deliberation and premeditation," (2) he aided and abetted an assault with a deadly weapon and the murder was a natural and probable consequences of the assault, or (3) he aided and abetted the exhibition of a firearm and the murder was a natural and probable consequences of exhibiting the firearm.

The jury found Ventura guilty of second-degree murder (§ 187, subd. (a)) and found true allegations a principal was

4

armed (§ 12022, subd. (a)(1)) and a principal fired a gun, causing death (§ 12022.53, subd. (d) & (e)).  The jury found a gang enhancement allegation not true.  (§ 186.22, subd. (b)(1).)

The trial court sentenced Ventura to state prison for 16 years to life.  In 2002, this court affirmed Ventura's convictions. (*People v. Ventura* (Dec. 23, 2002, B155942) [nonpub. opn.].)

On January 8, 2019, Ventura filed a petition for resentencing.  The court denied the petition because it found the preliminary hearing transcript from Ventura's trial showed he actively participated in the murder.  The court also found the resentencing law unconstitutional.  We reversed the court's denial order and remanded for further proceedings.  (*People v. Ventura* (Oct. 30, 2020, B297443) [nonpub. opn.].)

On remand, the court issued an order to show cause.  The prosecution and Ventura filed briefs.  The court denied the petition.  It noted the beyond a reasonable doubt burden of proof and said it reviewed the record, including the trial transcripts and clerk's transcripts from the jury trial.  The court found Ventura was a major participant who acted with reckless indifference to human life and had a specific intent to kill.

The court explained:

> "The defendant and his fellow gang members for no reason whatsoever follow them in a car as if stalking them.  A statement is heard coming from the car, 'There's an enemy.'

5

"The defendant and his gang drive ahead of the siblings and block their path with their car as they all exit the car and confront and further block the path to not permit escape, then, in gang terms, hit them up.

"The siblings deny gang relations. The defendant and his friends inspect the boy and see no tattoos or gang markings. . . . He had none.

"The gang members ask each other whether the boy should be shot or not. They all agree with gestures that clearly indicate their consent to kill. The defendant, as all the others, gave his consent. They command the sister to move away from the brother. And the sister testifies, '[h]e shot my brother one time. And my brother closed his eyes, [and my brother] dropped his head, and my brother fell to the floor.[' (Quotation from the trial transcript).] And then they shot him six more times. They got in the car and left.[]

"The facts being relitigated shock the conscience of this Court. There is a severe, to this Court, depraved lack of humanity, morals, and sociological norms. It so utterly and clearly demonstrates that the defendant had, in this Court's opinion, a dark, cold-hearted evil, a brutal, empty callousness to him. And for what? For each

6

participant, including the defendant, to show their gang prowess, their might, and their control.

"It was a complete gang case shooting, of which we have unfortunately seen thousands in the history of this county and state and will no doubt see thousands more.

"But in this case, the record is replete with facts that detail that the defendant acted with reckless indifference to human life and was a major participant in the murder. . . ."

The court went on to cite several facts: the "stalking" of the siblings in the car; the statement about the "enemy"; the blocking of the siblings' path; the questioning about gang affiliation; Ventura's consent to the murder; the shooter's several shots; and the fleeing together in Ventura's car.

## II

There is substantial evidence Ventura was ineligible for relief because he was guilty of second degree murder under an implied malice aiding and abetting theory.

We review the trial court's findings for substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298; *People v. Vivar* (2021) 11 Cal.5th 510, 528, fn. 7 [*Vivar* did not disturb the familiar substantial evidence standard of review for trial court factual findings].)

Section 1172.6 sets out a procedure for those convicted of felony murder or murder under the natural and probable

7

consequences theory to petition the sentencing court to vacate their conviction.

The final step is an evidentiary hearing, during which the prosecution must prove, beyond a reasonable doubt, the petitioner is guilty under currently-valid law. (§ 1172.6, subd. (d).) At this hearing, the court may consider evidence from any earlier hearing or trial if that evidence is admissible under current law. (*Ibid.*) If the prosecution does not sustain its burden of proof, the court must vacate the conviction and resentence the petitioner on any remaining charges. (*Ibid.*)

One currently-valid theory of murder is aiding and abetting with implied malice.

A person who aids and abets a crime is culpable as a principal in that crime. (*People v. Gentile* (2020) 10 Cal.5th 830, 843 (*Gentile*).) An aider and abettor's guilt is based on the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) Proof of aiding and abetting liability requires proof of (1) the direct perpetrator's actus reus; (2) the aider and abettor's mens rea, which is knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving the unlawful ends; and (3) the aider and abettor's actus reus, which is conduct that in fact assists the crime. (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)

Aiders and abettors who do not expressly intend to aid a killing can be convicted of second degree murder if they know

8

their conduct endangers the life of another and they act with conscious disregard for life. (*Gentile, supra*, 10 Cal.5th at p. 850; *People v. Langi* (2022) 73 Cal.App.5th 972, 979.)

Section 1172.6 bars convictions for second degree murder under the natural and probable consequences theory, but it does not alter the law for direct aiders and abettors. (*People v. Offley* (2020) 48 Cal.App.5th 588, 595–596.)

The currently-valid implied malice theory of murder applies to this case and substantial evidence supports the court's determination Ventura was ineligible for resentencing.

The direct perpetrator, the shooter, had the requisite actus reus: he shot Joel Gonzalez several times.

Ventura knew of the shooter's unlawful intent and intended to assist the shooting. When Ventura pulled his car over in front of the siblings, he knew the shooter as a friend, knew the shooter was a gang member, and knew the shooter identified Joel Gonzalez as a rival and an enemy. This creates a reasonable inference Ventura knew the shooter's intent and Ventura intended to assist in the shooting. The shooter had the gun trained on Joel Gonzalez before he looked to Ventura. At eight feet away, the most reasonable inference is that Ventura knew the shooter was armed with a gun and knew he was asking for Ventura's approval to shoot. Ventura's responsive nods demonstrate he approved and intended the shooting. We can infer Ventura knew the nods endangered Joel Gonzalez's life, and Ventura had conscious disregard for his life. Ventura's nimble

escape after the shooting manifested completion of an intended task, not shock or horror.

Ventura's acts assisted the shooting. He drove slowly by the siblings, parked in a discreet position along their path, and helped block them. He nodded to approve the shooting. He ferried the group away afterwards.

The jury's not true finding for the gang allegation did not preclude a finding of implied malice. The jury found it was not true the murder "was committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members, within the meaning of [] Section 186.22(b)(1)."

It is unclear what this not true finding proves. Ventura says it "necessarily precluded any finding at resentencing that appellant committed a gang murder or relying on that factor to establish the requisite mens rea for malice murder." But what does "gang murder" and "that factor" mean? The gang allegation has multiple parts: benefit, association, or direction; the existence of a criminal street gang; and specific intent to assist criminal gang conduct. The jury may have found one, two, or all of these parts lacking. The finding therefore did not prohibit the resentencing court from mentioning gangs altogether. Nor did it disallow discussions and findings about concerted group action.

The jury's finding here may have reflected merely that it believed there was no intent to promote criminal gang conduct.

10

The resentencing court largely relied on facts that did not necessarily conflict with a lack of intent to promote criminal gang conduct, such as Ventura's actions as the driver and his nod to approve the shooting. The evidence the shooter called Joel Gonzalez an "enemy" before Ventura pulled over came from Ventura's own statements to police. The jury could have believed the shooter made that statement and still could have found the gang enhancement not true.

The resentencing court did call the case a "complete gang case shooting" and said Ventura's motive was to show "gang prowess." These findings arguably conflict with the jury's not true finding. We assume without deciding the court erred by relying on these particular findings. (See *People v. Cooper* (2022) 77 Cal.App.5th 393, 416–417 [where jury acquitted defendant of felon in possession of a firearm charge, trial court erred by denying section 1172.6 relief based on its inconsistent finding defendant possessed and fired gun].) This was harmless under any standard because, as we have explained, the resentencing court largely relied on facts that did *not* necessarily conflict with the gang finding. Furthermore, the resentencing court discussed gangs when it opined about a potential gang motive in the case, but motive is not a necessary element of second degree murder. To the extent the court improperly relied on facts that conflicted with the gang finding, this was harmless.

11

**DISPOSITION**

The order denying Ventura's petition for resentencing is affirmed.

WILEY, J.

We concur:

STRATTON, P. J.

GRIMES, J.